## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.C., a minor, B.C., a minor, and Mr. R.C. and Mrs. M.C., in their own right, | ) ) ) | Civil Action |
| | ) | |
| **Plaintiffs,** | ) | No. _____ |
| | ) | |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| Greensburg-Salem School District, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## <u>COMPLAINT</u>

As set forth below, Plaintiffs, J.C., B.C., and their parents, Mr. R.C. and Mrs. M.C., in their own right (hereinafter "Plaintiffs") claim violations of Section 504 of the Rehabilitation Act of 1973 and its implementing regulations, Title IX of the Education Amendments Act of 1972, 20 U.S.C. §1681(a), as well as Title II of the Americans with Disabilities Act and its implementing regulations, 42 U.S.C. § 1983, and the Fourteenth Amendment. Plaintiffs also include a claim for Recovery of Attorneys' Fees and Costs, pursuant to 20 U.S.C. §1415(i)(3)(B).

### PRELIMINARY STATEMENT

1.      This is an action brought by J.C., a student with a disability living in the Greensburg-Salem School District, B.C., his sibling, and their parents, Mr. R.C. and Mrs. M.C. (hereinafter "Plaintiffs"), alleging violations of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. Section

1983 ("Section 1983"), Title IX of the Education Amendments Act of 1972 , 20 U.S.C. §1681(a), and the Fourteenth Amendment.

2.      This is an original action through which Plaintiffs allege that the Greensburg-Salem School District discriminated against B.C., Mr. R.C., and Mrs. M.C. by association, resulting in an additional violation of Section 504 and the ADA.

3.      In an administrative due process hearing before a hearing officer from the Office of Dispute Resolution, it was determined that the District violated Section 504 of the Rehabilitation Act with deliberate indifference. Defendant did not appeal this determination. Under Section 504 of the Rehabilitation Act, a finding of deliberate indifference entitles Plaintiffs to compensatory damages. However, the hearing officer in the underlying due process hearing lacks the jurisdiction to award the compensatory damages to which Plaintiffs are entitled. Thus, in the instant action J.C. requests monetary damages to remedy the District's discrimination against him.

4.      Plaintiffs' complaint also includes an explicit claim for attorneys' fees pursuant to the IDEA, 20 U.S.C. §1415(i)(3)(B), based on their status as a prevailing party at the Office of Dispute Resolution administrative due process hearing.

5.      Plaintiffs are also requesting declaratory and equitable relief to remedy the District's violations, as well as additional monetary damages due to the District's deliberate indifference discrimination of Plaintiffs B.C., Mr. R.C., and Mrs. M.C. under Section 504 and the ADA.

6.      Finally, Plaintiffs seek all other appropriate relief available and attorneys' fees pursuant to the IDEA, Section 504, the ADA, and Section 1983.

**PARTIES**

7.       Plaintiff J.C. is a mid-teenaged student residing in the Greensburg-Salem School District. J.C. currently attends a cyber charter school and receives special education services and supports through an Individualized Education Program ("IEP"). J.C. is a student with a disability who is eligible for special education pursuant to the IDEA on the bases of Autism and Specific Learning Disabilities. He is also identified as a student with a Speech and Language deficit.

8.       Plaintiff B.C. is a sixth grade student residing in the Greensburg-Salem School District. B.C. currently attends a cyber charter school.

9.       Plaintiff Mr. R.C. is the father and natural and legal guardian of J.C. and B.C. and resides within the Greensburg-Salem School District. Mr. R.C. is the husband of Mrs. M.C.

10.      Plaintiff Mrs. M.C. is the mother and natural and legal guardian of J.C. and B.C., and resides within the Greensburg-Salem School District. Mrs. M.C. is the wife of Mr. R.C.

11.      Defendant Greensburg-Salem School District is a local School District and a public entity organized under the laws of the Commonwealth of Pennsylvania. The District is a Local Education Agency ("LEA") and a recipient of federal funds, and it is therefore legally bound by the provisions of the IDEA, Section 504, the ADA, and Section 1983.

**JURISDICTION AND VENUE**

12.      This Complaint seeks appropriate relief for violations and denial of equal access to education pursuant to Section 504, 29 U.S.C. § 794, the ADA, 42 U.S.C. §§ 12101, *et seq*, Title IX of the Education Amendments Act of 1972 , 20 U.S.C. §1681(a), the Fourteenth Amendment, and 42 U.S.C. §1983.

13.      This action arises under the laws of the United States, and therefore this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

14.    Further, this action seeks recovery of attorneys' fees and costs pursuant to the

IDEA, 20 U.S.C. §1415(i)(3)(B), and Section 504, 29 U.S.C. §794a.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the events

and omissions giving rise to the claims in this case arose in this judicial district and all parties

reside in this judicial district.

**PROCEDURAL HISTORY**

16.    On May 17, 2017, Plaintiffs filed an administrative Due Process Complaint with

the Office for Dispute Resolution ("ODR") alleging, among other claims, that the District

violated the IDEA and Section 504 by failing to provide J.C. a free, appropriate public education

("FAPE"), and that the District had discriminated against J.C. on the basis of his disability in

violation of Section 504.

17.    The Parties had previously entered into a Tolling Agreement, establishing the

filing date for purposes of the timely filing determination as February 17, 2017.

18.    As relief, Plaintiffs sought declaratory relief, reimbursement of private expenses,

and compensatory education.

19.    Due Process Hearing sessions convened October 5, 2017, November 14, 2017,

and January 8, 2018.

20.    By a final Order dated February 15, 2018, the Hearing Officer issued a decision

finding that the District failed in its FAPE obligations to Plaintiff J.C. from February 17, 2015

through the conclusion of the 2014-2015 school year.  As relief, the District was ordered to

provide 6 hours of compensatory education per day for each day the District was in session

between February 17, 2015 through the conclusion of the 2014-2015 school year.  (A redacted

copy of the Order is attached hereto and incorporated by reference as though fully set forth as Exhibit A)

21.     The Hearing Officer found that the District discriminated against J.C. in violation of Section 504 of the Rehabilitation Act. The Hearing Officer held that the District acted with deliberate indifference toward him.

22.     As the Hearing Officer's decision was a final Order and Defendant failed to appeal that decision, Plaintiffs have exhausted all administrative remedies necessary to file the present Complaint.

## FACTUAL ALLEGATIONS

### General Background Information

23.     Student, J.C., is fifteen (15) years old, having a date of birth of October 11, 2003.

24.     J.C. has been diagnosed with Autism Spectrum Disorder ("ASD"), Specific Learning Disabilities in the areas of math calculation and math problem solving, as well as a Speech and Language Disorder.

25.     J.C. has difficulty with expressive language and communicating needs and feelings, and has social skill deficits. His communication deficits make it difficult for him to interact with peers, and also make him more susceptible to bullying and abuse.

26.     J.C. has been provided with outside behavioral support services at least since the fall of 2010.

27.     B.C. is a twelve (12) year old student, having a date of birth of September 21, 2006.

28.     B.C. began attending school in Defendant District at the start of the 2012-2013 school year for kindergarten.

29.     During his time in Defendant District, B.C. was transported to and from school on a school bus contracted by Defendant. Plaintiff J.C. was transported on the same school bus.

**2012 Sexual Assault and Trauma**

30.     During the summer of 2012, before J.C. was to start second grade, he reported to his outside behavior services consultant that another student had sexually assaulted him on the school bus.

31.     Specifically, J.C. disclosed that student D.H. had removed his pants and exposed his penis to J.C.

32.     J.C. was also upset because the offending student was also attempting to put himself in proximity to sibling B.C. following the 2012 incidents. J.C. feared D.H. would sexually assault B.C. if J.H. did not protect him.

33.     Mrs. M.C. and Mr. R.C. shared this immediately with Defendant, and ultimately met with J.C.'s principal on September 18, 2012 to discuss the matter.

34.     During this meeting, Mrs. M.C. stressed J.C.'s vulnerability, reminding the principal that J.C.'s social skill deficits and desperate desire to be accepted by peers made him extremely susceptible to abuse and manipulation by peers. She was fearful, but the principal convinced her that the situation would be addressed and monitored going forward.

35.     The principal assured Mr. R.C. and Mrs. M.C. that she would share the information with J.C.'s teachers so the students could be appropriately supervised. Mr. R.C. and Mrs. M.C. trusted that the principal would appropriately address the situation.

36.     The student involved, D.H., was well known in Defendant District as a behavior and discipline problem.

37.     J.C.'s parents were assured that his interactions with D.H. would be monitored closely throughout the 2012-2013 school year.

**Defendant Failure to Supervise Results in Ongoing Victimization**

38.     Mr. R. C. and Mrs. M.C. believed, after meeting with Defendant in 2012, that J.C. was being closely supervised when interacting with student D.H. Defendant failed to notify Mr. R.C. or Mrs. M.C. at the start of the 2013-2014 school year that J.C. was in fact being permitted to sit with or near student D.H. in the back of the school bus. This effectively prevented the only adult on the bus—the bus driver—from observing what was occurring between the two students.

39.     As a result, D.H. repeatedly victimized J.C.

40.     D.H. forced J.C. to touch his penis, and also rubbed his penis on J.C.

41.     Because of his social skill deficits, desire to be accepted by peers, and lack of understanding of appropriate interpersonal communication, J.C. did not report this incidents during this time. Instead, he became more anxious and depressed, and acted out at home.

42.     By February 2013, J.C. began displaying self-harm behaviors. By June 2013, mobile therapy services were recommended for J.C. He was noted to be unable to regulate his emotions, and his relationship with his sibling B.C. was deteriorating rapidly.

43.     In February 2014, Mrs. M.C. expressed her concerns to J.C.'s behavioral support consultant, noting heightened agitation, difficulties interacting with his younger brother, and difficulty expressing thoughts and emotions. Despite expressing a desire to improve his relationship with B.C., J.C. simultaneously expressed a great deal of frustration when interacting with him.

44. Mrs. M.C. continuously communicated with Defendant, making staff aware of J.C.'s increased anxiety and behavior issues.

45. Defendant failed to take any steps to determine the cause of J.C.'s change in behavior.

46. When the 2014-2015 school year began, J.C. and B.C. continued to be transported to school via the school bus contracted by Defendant District. Again, Defendant failed to provide adequate supervision.

47. By early February 2015, the sexual abuse had increased. Because Defendant failed to supervise D.H. and J.C. on the school bus, J.C. had been victimized for several years.

48. On February 5, 2015, J.C. was finally able to report to his learning support teacher that he had been a victim of the same peer's sexual abuse on the school bus.

49. Despite this disclosure, J.C.'s teacher failed to notify his parents.

**Events Following Disclosure by J.C. of Ongoing Sexual Assault**

50. When Mrs. M.C. picked J.C. up from school on February 5, 2015, he reported the same information he had shared with his learning support teacher to her. B.C. was in the vehicle at this time.

51. That evening, Mr. R.C. attempted to determine the timeframe over which the sexual abuse by the peer had occurred, but J.C. has difficulty with temporal concepts.

52. On February 6, 2015, a pediatrician examined J.C.

53. Mr. R.C. and Mrs. M.C. ultimately decided to keep both J.C. and B.C. home from school until they could be certain they would be safe in the school setting, as well as on the school bus.

54. Mr. R.C. and Mrs. M.C. reported the sexual abuse to local police on February 9,

2015.

55.     The state police interviewed J.C.'s teacher and the elementary school principal on February 10, 2015. In this interview, the elementary school principal learned that J.C.'s learning support teacher had failed to report the disclosure to her, per Defendant District's policy.

56.     As part of the investigation, the police reviewed video of the school bus. On many occasions, D.H. was observed travelling to J.C.'s seat.

57.     Through their investigation, police ultimately concluded that the incidents of sexual assault J.C. reported likely occurred during the early portion of the 2014-2015 school year. However, because only the most recent videotapes were available for review, it is likely J.C. was also being assaulted by D.H. prior to that time.

58.     Mr. R.C. and Mrs. M.C. spoke to the building principal on February 11, 2015, during which time they asked what steps could be taken to protect J.C. moving forward.

59.     Defendant proposed to change J.C.'s homeroom assignment, as D.H. was also in the current homeroom. Also, Defendant offered to provide J.C. with alternative transportation.

60.     Mr. R.C. and Mrs. M.C. were not satisfied with the District's response, as all offers would have resulted in a change for J.C., rather than D.H. Defendant was aware that J.C. struggled with transitions, and these changes would have a significant negative impact on him. Moreover, J.C. perceived changes of his schedule as punishment, and did not understand why D.H., who had perpetrated the sexual abuse, was not being disciplined.

61.     When Mr. R.C. and Mrs. M.C. shared J.C.'s disclosure with his therapist, she concluded J.C.'s progressively worsening behavior and strained relationship with B.C. were a result of the ongoing sexual abuse.

62.     On February 20, 2015, staff at A Child's Place at Mercy Westmoreland conducted

a forensic interview of J.C. and B.C.

63.     When asked why he was there, J.C. responded, "Because of D.H.," and added, "He's not a good kid. He tried to piss on me, tried to have sex with me." J.C. continued by stating that D.H. "tried to kiss me, and made me stick my private, he pinched me, and I pinched him back. He spit on my face and tried to steal my games." When asked to further elaborate, J.C. stated that this year on his school bus, D.H., "jumped on my seat, and I tried to get away. He tried to kiss me." J.C. then stated that D.H., "poked my penis" and pulled down his pants. J.C. further explained that "D.H. wiggled his penis on mine." Additionally, J.C. stated that D.H., "licked my penis," and punched him.

64.     On February 26, 2015, Mr. R.C. and Mrs. M.C. requested a meeting with Defendant. They also confirmed that until Defendant completed its formal investigation of the sexual abuse, J.C. and B.C. would not be returning to school.

65.     Defendant never finalized or completed its investigation of the sexual abuse, and never provided a written report to the family.

66.     Despite J.C.'s disclosure, the District failed to revise his IEP to ensure he received the emotional support, counseling, and increased supervision required to address the sexual abuse appropriately.

67.     Because school remained unsafe for J.C. and B.C., Mr. R.C. and Mrs. M.C. kept them home.

68.     Defendant sent Mr. R.C. and Mrs. M.C. letters about J.C. and B.C.'s absences from school, both excused and unexcused, in March 2015.

**Deliberate Indifference of Defendant to Needs of J.C. and B.C.**

69.     Defendant never met with Mr. R.C. and Mrs. M.C. regarding J.C. and B.C.'s

truancy from school. Defendant also did not pursue truancy charges with the magistrate regarding J.C. or B.C. because of the circumstances that had led to the absences.

70.     J.C. was due for a new triennial evaluation pursuant to the IDEA.

71.     Despite the sexual abuse disclosed by J.C. and his obvious need for increased supports to address his anxiety, depression, and safety concerns, Defendant opted only to review J.C.'s previous educational records when conducting the evaluation. Defendant ignored Mr. R.C. and Mrs. M.C.'s concerns. No observations were attempted as part of the evaluation, and J.C. was not asked to provide feedback.

72.     Mr. R.C. and Mrs. M.C. again explicitly stated that J.C. and B.C. could not return to school until their safety was addressed.

73.     Defendant District met with Mr. R.C. and Mrs. M.C. on April 20, 2015. At that meeting, a new IEP was also presented to Mr. R.C. and Mrs. M.C.

74.     The April 2015 IEP failed to address J.C.'s obvious need for emotional support following the disclosure. Defendant failed to offer in-school counseling or access to a supportive staff member. Moreover, no plan was developed to address J.C.'s safety and need for supervision. As a result, J.C. and B.C. could not return to school.

75.     The April 2015 IEP did not include any information on or plan to address J.C.'s absences from school, and the team did not discuss concerns about attendance. B.C.'s attendance was also not discussed.

76.     As a result of Defendant's failure to address student's emotional and safety needs, J.C.'s accrued 49 unexcused and 6 excused absences during the final two quarters of the 2014-2015 school year. B.C. accrued 51 unexcused absences and 7 excused absences for B.C. during the final two quarters of the 2014-2015 school year.

### The 2015-2016 School Year

77.     J.C. and B.C. enrolled in a cyber charter school in August 2015. Both currently continue to attend the cyber charter school.

78.     Mrs. M.C. was traumatized by J.C.'s abuse and disclosure, and to date experiences panic attacks. Moreover, Mrs. M.C. required extensive support in her home in order to enable her to care for her children properly. She was unable to work consistently for the family business. This resulted in tremendous financial burden on Plaintiffs' family.

79.     Further, Mrs. M.C.'s mental health prevented her from supporting J.C. and B.C. in their cyber school program, which forced Plaintiffs to secure in-home tutoring and support.

80.     During the 2015-2016 school year, Mr. R.C. and Mrs. M.C. arranged for an adult facilitator to assist J.C. and B.C. with focus, completing assignments for the charter school, and to aid students in transitioning to the cyber charter program.

81.     The expense of the private facilitator is ongoing, as J.C. and B.C. continue to require support.

82.     To date, J.C. continues to manifest and express anxiety over the February 2015 sexual abuse and the peer involved. J.C. remains fearful of seeing the peer again, and also expresses concerns that the peer will victimize other students.

83.     Further, B.C. has developed issues with anger and frustration, and his relationship with J.C. was further strained by these incidents.

### Ongoing Impact on Mr. R.C. and Mrs. M.C.

84.      Following J.C.'s disclosure, Mrs. M.C. suffered a significant emotional trauma.

85.      Mr. R.C. and Mrs. M.C. own their own business, and prior to the incidents described herein Mrs. M.C. assisted in managing the company's finances and operations.

86.     Mrs. M.C. is no longer able to independently manage these tasks, as she struggles daily with feelings of intense guilt, anxiety, and depression.

87.     Further, Mr. R.C. and Mrs. M.C.'s marriage has been negatively impacted.

88.     Mrs. M.C. often struggles to leave the family home, and has required support in-home in order to care for J.C., B.C., and the family's third child.

89.     Mr. R.C. also has experienced significant anxiety and guilt over not having been able to protect J.C.

90.     Mr. R.C. and Mrs. M.C. continue to struggle to provide J.C. the supports he requires to appropriately address and cope with his trauma..

91.     J.C. and B.C.'s relationship has also been negatively impacted by the events described herein. Given their young ages, B.C. blames J.C. for his removal from Defendant District. As a result, B.C. resents J.C., and their relationship is strained as a result.

92.     All family members will require ongoing therapeutic supports to address the traumas they have individually and collectively experienced as a result of the incidents described herein.

### COUNT I: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 RELATED TO PLAINTIFF J.C.

### COUNT II: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT RELATED TO PLAINTIFF J.C.

93.     The averments set forth in each of the preceding paragraphs are incorporated by reference here as though fully set forth at length.

94.   Section 504 prohibits disability discrimination by recipients of federal funds. The statute provides that:

> No otherwise qualified individual with a disability in the United States . . . shall,

solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

29 U.S.C. § 794(a).

95.    Compensatory damages are an available remedy under Section 504.

96.    Hearing Officer Skidmore, in her February 2017 opinion, held that Defendant violated Section 504. Specifically, she determined that Defendant acted with deliberate indifference, and Plaintiffs are entitled to damages as a result.

97.    Defendant failed to appeal this finding.

98.    Section 202 of the ADA similarly states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This standard applies even to entities that do not receive Federal funds. *Id.*

99.    The same standards govern both the Section 504 and the ADA claims. *S.H. ex rel. Durrell v. Lower Merion School District*, 729 F.3d 248, 260 (3d Cir. 2013). Thus, Counts I and II will be considered together here.

100.    The ADA also permits the award of compensatory damages based on a showing of intentional discrimination. *Id.* at 260-65.

101.    J.C. was not able to access his educational program due to his disability. J.C. was denied any educational supports or services from February 2015 through the conclusion of the 2014-2015 school year.

102.     The lack of access to any educational programming resulted in harm to J.C., including cognitive, psychological, and socio-relational damage.

103.     As a direct result of Defendant's deliberate indifference, J.C.'s relationship with B.C., Mr. R.C., and Mrs. M.C. have been irreparably damaged. J.C. has experienced increased anxiety and depression, and remains fearful when out in the local community. He will require ongoing therapeutic supports to cope with the trauma he endured.

**WHEREFORE**, Plaintiffs respectfully request that this Court award Plaintiffs all remedies available under Section 504 and the ADA for these violations, including monetary damages and attorneys' fees and costs.

### COUNT III: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 RELATED TO PLAINTIFFS B.C., MR. R.C., and MRS. M.C.

### COUNT IV: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT RELATED TO PLAINTIFFS B.C., MR. R.C., and MRS. M.C.

104.     The averments set forth in each of the proceeding paragraphs are incorporated by reference here as though fully set forth at length.

105.     Plaintiffs note that, because the Hearing Officer lacked jurisdiction to decide Plaintiffs' associational discrimination claims, such claims are presented as an original action.

106.     The same standards govern both the Section 504 and the ADA claims. *S.H.*, 729 F.3d at 260. Thus, Counts III and IV will be considered together here.

107.     A plaintiff asserting an associational discrimination claim under Section 504 and Title II of the ADA must plausibly allege:

> (1) a logical and significant association with an individual with disabilities; (2) that a public entity knew of that association; (3) that the public entity discriminated against them because of that association; and (4) they suffered a direct injury as a result of the discrimination.

*Schneider v. Cnty. of Will*, 190 F. Supp. 2d 1082, 1091 (N.D. Ill. 2002) (*citing* 28 C.F.R. § 35.130(g)).

108.     The first two elements of an associational discrimination claim are easily met in the present matter. B.C. is J.C.'s sibling, and Mr. R.C. and Mrs. M.C. are J.C.'s parents. J.C. has a disability. Furthermore, the District clearly knew of this association.

109.     The District discriminated against Mr. R.C. and Mrs. M.C. because of their association with J.C. by continuously failing to provide sufficient supervision and support, despite Mr. R.C. and Mrs. M.C.'s constant efforts and requests, to allow J.C. to access his education.

110.     The District ignored Mr. R.C. and Mrs. M.C.'s concerns, which directly resulted in J.C. being denied adequate supervision, as well as access to a free, appropriate public education.

111.     Moreover, despite Mr. R.C. and Mrs. M.C. requesting through the IEP process revisions be made to J.C.'s IEP to permit him to return to school, their concerns were ignored. While they were permitted to attend the IEP meeting, they were denied the opportunity to meaningfully participate.

112.     Further, Mr. R. C. and Mrs. M.C. believed, after meeting with Defendant in 2012, that J.C. was being closely supervised when interacting with student D.H. Defendant failed to notify Mr. R.C. or Mrs. M.C. that J.C. was in fact being permitted to sit with or near student D.H. in the back of the school bus. This effectively prevented the only adult on the bus—the bus driver—from observing what was occurring between the two students.

113.     The District discriminated against B.C. because of an association with J.C. by continuously failing to implement additional supports or supervision, despite Mr. R.C. and Mrs.

M.C.'s continued efforts and requests.

114.    B.C. has a right to be provided a public education, pursuant to the Fourteenth Amendment, as a student in the United States.

115.    Defendant District was aware that, until appropriate supports and supervision were put in place to ensure J.C. (and B.C.) were safe on the school bus and in the school building, B.C. was unable to return to school.

116.    Despite this, Defendant District failed to act, and thus forced B.C. out of school.

117.    As a result of the anxiety and stress she experienced because of the incidents described in this Complaint, Mrs. M.C.'s mental and physical health declined. She was unable to adequately care for her children without support, and as a result the family was forced to hire private in-home support. Moreover, Mrs. M.C. was unable to maintain her role in the family's business. Mrs. M.C. suffered direct injury as a result of the discrimination.

118.    Mr. R.C. also suffered direct injury as a result of the discrimination. He was forced to witness both his wife and children suffer because of Defendant's actions, which significantly impacted his mental and physical health. Moreover, as founder of the family business, Mr. R.C. was forced to manage additional tasks as a result of Mrs. M.C.'s inability to work. The business also suffered as a result.

119.    Moreover, the marriage of Mr. R.C. and Mrs. M.C. was significantly strained as a result of the situation created by Defendant's actions.

120.    Additionally, B.C.'s relationship with J.C., Mr. R.C., and Mrs. M.C. was significantly strained as a result of the situation created by Defendant's actions.

121.    Therefore, Plaintiffs B.C., Mr. R.C., and Mrs. M.C. have suffered discrimination on the basis of their association with J.C., a child with a disability, due to the District's actions.

**WHEREFORE**, Plaintiffs respectfully request that this Court find that the District discriminated against B.C., Mr. R.C., and Mrs. M.C. based on their association with an individual with a disability and award Plaintiffs all remedies available under Section 504 and the ADA for these violations, including monetary damages and attorneys' fees and costs.

**COUNT V: VIOLATION OF 42 U.S.C. SECTION 1983**
**BREACH OF A SPECIAL CUSTODIAL RELATIONSHIP**

122.    The averments set forth in each of the proceeding paragraphs are incorporated by reference here as though fully set forth at length.

123.    Under the law, an affirmative duty to act arises out of certain "special relationships" between states and individuals. *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013).

124.    Although a "special relationship" sufficient to establish a public school's duty to protect students does not generally exist, the Third Circuit has made clear that a narrow exception exists where:

> [C]ircumstances must be so significant as to forge a different kind of relationship between a student and a school than that which is inherent in the discretion afforded school administrators as part of the school's traditional *in loco parentis* authority or compulsory attendance laws.

*Morrow v. Balaski*, 719 F.3d 160, 171 (3d Cir. 2013).

125.    Despite a previous allegation of sexual misconduct by student D.H. against J.C. on the school bus, J.C.'s IEP team failed to provide J.C. with additional supports to ensure he was not victimized again.

126.    The IEP team possessed specialized knowledge of J.C.'s unique needs. Specifically, the team understood that J.C.'s social skill deficits and vulnerability made him dependent on Defendant to ensure his safety. and was obligated under the IDEA to ensure he was

provided with the supports necessary to access his educational programming. As such, a "special relationship," sufficient to create a District duty to protect exists in this case.

127. Despite this "special relationship, the District failed to provide J.C. the supervision he was required, and permitted D.H. to victimize him for a prolonged period as a result.

128. As a result of this failure, J.C. suffered trauma and distress, as outlined herein.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant appropriate relief including monetary damages, attorneys' fees, costs, and all other relief as is appropriate and necessary.

### COUNT VI: VIOLATION OF THE FOURTEENTH AMENDMENT STATE CREATED DANGER

129. The averments set forth in each of the proceeding paragraphs are incorporated by reference here as though fully set forth at length.

130. To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

131. The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1.

132. Plaintiffs argue that the District violated J.C.'s Fourteenth Amendment rights, and this violation is actionable pursuant to Section 1983 under the "state-created danger" theory.

133. To establish a state-created danger claim, plaintiffs must establish four elements:

(1) The harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff or with a degree

of culpability that shocks the conscience; (3) there existed some relationship between the state and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) that the state actors affirmatively used their authority to create a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

*Enright v. Springfield Sch. Dist.,* 2007 WL 4570970, at *8 (E.D. Pa. 2007).

134.    Further, "a constitutional violation may result when 'state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention." *Id*. (citing *Burella v. City of Phila*., 501 F.3d 134, 146-47 (3d Cir. 2007).

135.    The District knew or should have known of J.C.'s vulnerability, as well as the lack of adequate supervisions provided on the school bus.

136.    The District, based on this knowledge, should have anticipated that J.C. would have been victimized by student D.H. again on the bus absent the provision of additional supervision.

137.    The harm ultimately caused to J.C. was foreseeable and fairly direct.

138.    The District acted in willful disregard for J.C.'s safety.

139.    There was a specific relationship between J.C. and the District, in that J.C. was a student with a disability in its care and protection as required by law.

140.    The District used its authority to create the opportunity for harm that otherwise would not have existed by placing J.C. on the bus with student D.H., and subsequently failing to provide the appropriate supervision required to ensure J.H. was not victimized again.

141.    The District's actions were predicated on a failure to act in light of a known risk.

142.     The District's actions manifested a disregard of a high and excessive degree of danger, known to it or apparent to a reasonable person in its position.

143.     The actions of the District were outrageous and willful or undertaken in such a negligent manner as to rise to the level of outrageousness and willfulness.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant appropriate relief including monetary damages, attorneys' fees, costs, and all other relief as is appropriate and necessary.

## COUNT VII: VIOLATION OF 42 U.S.C. SECTION 1983
## MR. R.C. and MRS. M.C. v. THE DISTRICT—VIOLATION OF LIBERTY INTEREST

144.     The averments set forth in each of the proceeding paragraphs are incorporated by reference here as though fully set forth at length.

145.     "To state a due process claim under § 1983, a plaintiff 'must identify a 'recognized liberty or property interest within the purview of the Fourteenth Amendment and show that they were intentionally or recklessly deprived of that interest, even temporarily, under state law.'" *Anspach ex rel. Anspach v. Cty. of Phila., Dept. of Publ. Health*, 503 F.3d 256, 262 (3d Cir. 2007) (quoting *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990).

146.     Mr. R.C. and Mrs. M.C. possessed a liberty interest, guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in the parenthood and companionship of their children, J.C., and the maintenance and integrity of their family.

147.     The actions of the District in failing to adequately supervise J.C., resulting in his being victimized on the bus, was the proximate cause of the loss and diminution of these rights.

148.     Mr. R.C. and Mrs. M.C. suffered damage, trauma, and distress, as more

specifically described herein, which was proximately caused by the conduct of the District.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant appropriate relief including monetary damages, attorneys' fees, costs, and all other relief as is appropriate and necessary.

## COUNT X: VIOLATION OF TITLE IX

149.     The averments set forth in each of the preceding paragraphs are incorporated by reference herein as though fully set forth at length.

150.     The sex-based harassment articulated herein was so severe, pervasive, and objectively offensive that it deprived J.C. of access to educational opportunities or benefits provided by the school.

151.     The Defendant District created and/or subjected J.C. to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a) because:

    a.  J.C. was a member of a protected class;

    b.  The Defendant had actual knowledge of student D.H.'s history of behavioral problems and previous sexual abuse of J.C.;

    c.  The Defendant's knowledge of student D.H.'s history of behavioral problems and previous sexual abuse of J.C. put it on notice that he posed a substantial risk;

    d.  The Defendant allowed D.H. to be transported with J.C. with no additional supervision on the bus other than a traditional school bus driver;

    e.  As a result of Defendant's choices, J.C. was subjected to sexual harassment in the form of a sexual assault by another student;

f.  The sexual assault against J.C. was so severe that it barred him from access to educational opportunities and benefits;

g.  Following the sexual assault, the Defendant failed to offer or implement any significant or appropriate supports or supervision to ensure J.C. was not victimized again;

h.  The Defendant's lack of policies and procedures, or failure to follow them, amounted to an/or caused a violation of Title IX and J.C.'s Title IX rights;

i.  The Defendant's response to the sexual assault against J.C. amounted to deliberate indifference, differential treatment, discrimination, and/or retaliation against J.C.;

j.  The Defendant's response to the sexual assault amounted to and caused of violation of Title IX and J.C.'s rights thereunder; and

k.  The Defendant's actions and failures to act created a hostile educational environment for J.C.

152.  J.C. has suffered damages, including interference with his educational opportunities, as a direct and proximate result of Defendant's violations of his rights under Title IX.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant appropriate relief including monetary damages, attorneys' fees, costs, and all other relief as is appropriate and necessary.

## <u>COUNT XI: CLAIM FOR ATTORNEYS' FEES AND COSTS</u>

153.  The averments set forth in each of the preceding paragraphs are incorporated by reference herein as though fully set forth at length.

154.    The Plaintiffs achieved prevailing party status in their claims that the District violated both the IDEA and Section 504, as it denied J.C. FAPE from February 17, 2015 through the conclusion of the 2014-2015 school year.

155.    Moreover, Plaintiffs also prevailed on their claim under Section 504 that the District discriminated against and acted with deliberate indifference toward J.C..

156.    Plaintiffs have prevailed in the administrative proceeding held in this matter.

157.    The failure of the District to reimburse Plaintiffs' attorneys' fees and costs denies Plaintiffs their prevailing party rights under federal law.

158.    Section 504 and the ADA authorize this Honorable Court to award reasonable attorneys' fees and costs to Parents who prevail in any action or proceeding.

159.    At all times during the administrative proceedings and continuing to present, Plaintiffs were represented by counsel from the firm of Ruder Law, LLC.

160.    During the course of their continued representation, Ruder Law, LLC incurred the following time and costs:

   a.   In preparing, attending, and defending J.C.'s and his Parents' multiple claims, attorneys' fees are more than $50,000.00 for roughly 200 hours of work; and

   b.   The expenditure of Four Hundred Dollars ($400.00) for filing the instant action; and

   c.   Additional attorneys' fees accrued as a result of the instant action.

161.    The attorneys' fees, hourly rate, and costs are fair and reasonable in the Western District, and the rates are based on rates prevailing in the community for legal services furnished in this District, and all services provided were reasonable and necessary to achieve the prevailing party status in all actions, complaints, or proceedings.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court award them full reimbursement of all attorneys' fees and costs as permitted by law through the administrative proceedings and the instant action.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request this Court enter an Order:

1. Assuming jurisdiction of this case;

2. Declaring that the District's actions and omissions constituted discrimination against Plaintiffs Mr. R.C., and Mrs. M.C., and B.C. based on their association with an individual with a disability under Section 504 and the ADA;

3. Awarding compensatory damages for the District's violations under Section 504 and the ADA;

4. Awarding monetary damages to Plaintiffs to address the emotional, mental, and physical anguish and distress experienced as a result of the District's violation of the ADA, Section 504, and Section 1983;

5. Awarding attorneys' fees and costs under the IDEA, ADA, Section 504, and Section 1983; and

6. Granting any other appropriate and necessary relief as the Court deems appropriate, including monetary damage, punitive and exemplary damages, and attorneys' fees.

Respectfully Submitted,

/s/ Kristen C. Weidus, Esq.
PA Attorney ID 313486
Ruder Law
429 Forbes Avenue, Suite 450
Pittsburgh, PA 15219
Date: December 19, 2018     Telephone: (412) 281-4959
Email: kristenweidus@ruderlaw.com